THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES SMITH, SALLY SMITH, KAYLA ROTELLINI, MICHAEL ROTELLINI and ANTOINETTE MACZKO, | ) ) ) | Civil Action No.  2:19-cv-01672-JFC |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | *Electronically Filed* |
| | ) | |
| WASHINGTON AREA HUMANE SOCIETY, a non-profit organization, GENE KARCH, an individual, GLEN THOMSON, an individual, and MARANDA COMBS, an individual, | ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS WASHINGTON AREA HUMANE SOCIETY, GLEN THOMSON, AND MARANDA COMBS' BRIEF IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

Defendants, Washington Area Humane Society ("WAHS"), Glen Thomson ("Thomson"), and Maranda Combs ("Combs") (hereinafter collectively "Defendants"), by and through their undersigned counsel, Janet K. Meub, Esquire, and Dickie, McCamey & Chilcote, P.C., file this Brief in Support of their Motion to Dismiss Plaintiffs' Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6).

## I.  QUESTIONS PRESENTED

A.  **SHOULD DEFENDANT WAHS BE DISMISSED FROM THIS LAWSUIT BECAUSE IT CANNOT BE HELD LIABLE UNDER *MONELL*?**

*SUGGESTED ANSWER:  YES.*

B.  **SHOULD COUNT I OF PLAINTIFFS' COMPLAINT BE DISMISSED FOR FAILURE TO STATE A CLAIM OF UNLAWFUL SEARCH AND SEIZURE?**

*SUGGESTED ANSWER:  YES.*

C.  **SHOULD COUNT II OF PLAINTIFFS' COMPLAINT BE DISMISSED FOR FAILURE TO STATE A CLAIM OF MALICIOUS PROSECUTION?**

*SUGGESTED ANSWER:  YES.*

D.    **SHOULD COUNT III OF PLAINTIFFS' COMPLAINT BE DISMISSED FOR FAILURE TO STATE A CLAIM OF RETALIATION?**

*SUGGESTED ANSWER:  YES.*

E.    **SHOULD COUNT IV OF PLAINTIFFS' COMPLAINT BE DISMISSED FOR FAILURE TO STATE A CLAIM OF CONSPIRACY?**

*SUGGESTED ANSWER:  YES.*

F.    **SHOULD COUNTS V, VI AND VII (STATE LAW CLAIMS) OF PLAINTIFFS' COMPLAINT BE DISMISSED FOR FAILURE TO STATE A CLAIM?**

*SUGGESTED ANSWER:  YES.*

G.    **SHOULD DEFENDANTS THOMSON AND COMBS BE GIVE QUALIFIED IMMUNITY AGAINST PLAINTIFFS' CLAIMS?**

*SUGGESTED ANSWER:  YES.*

H.    **SHOULD PLAINTIFFS' REQUEST FOR RELIEF IN THE FORM OF PUNITIVE DAMAGES BE STRICKEN?**

*SUGGESTED ANSWER:  YES.*

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs are a multi-generational family (grandmother, husband and wife, daughter and son-in-law) living in a home in Washington County, Pennsylvania, along with two minor children and their pets. See Complaint attached hereto as Exhibit "A." Defendant Washington Area Human Society (WAHS) is a Pennsylvania non-profit corporation and the employer of humane society officers, Defendants Glen Thomson "Thomason") and Maranda Combs ("Combs"). Defendants Thomson and Combs are authorized to conduct investigations of claims of animal neglect and animal cruelty pursuant to 22 Pa. C.S. § 3701, et seq..

Plaintiffs' puppy escaped from their home on August 25, 2019. (Plaintiffs' Complaint is attached hereto as Exhibit "A", ¶ 15). The puppy was found by Lacey Simpson sometime thereafter.

On August 26, 2019, Defendant Thomson received a call from the Chief of Police of Jefferson Township, Defendant Gene Karch, identifying the Plaintiffs Kayla Rotellini ("KR") and Michael Rotellini ("MR") as the owners of the puppy found by Lacey Simpson. Plaintiffs contend that Defendant Karch made false allegations of animal abuse because he is related to the Plaintiffs through marriage and the families have "an unstable and volatile history." (Ex. A, ¶¶ 19-20). Plaintiffs maintain that Defendant Thomson should have known that the allegations of animal abuse were patently false because he had previously investigated the Plaintiffs for claims of animal abuse which were proven to be unfounded. (Ex. A, ¶¶ 22-24).  Plaintiffs allege that Thomson and Karch conspired with each other to take illegal and improper actions against the Plaintiffs.

 On August 28, 2019, Ms. Simpson brought the puppy to Defendant WAHS because it appeared to be sick.  The puppy was tested, determined to have a  Parvo, a contagious virus, and transported to Pittsburgh Veterinary Specialty and Emergency Center ("PVSEC") for emergency veterinary treatment.  The puppy failed to recover, and it was ultimately euthanized by PVSEC.

On September 4, 2019, Defendant Thomson presented an affidavit of probable cause and applied for a search warrant to search the Plaintiffs' property and seize "any and all animals alive, dead, and/or unborn." Plaintiffs maintain that the search warrant was "legally insufficient because it relied on an affidavit of probable cause that lacked any probably cause." (Ex. A, ¶¶

28-29).  Plaintiffs further allege that the search warrant failed to specify locations and/or items on the Plaintiffs' property the Defendants may and may not search. (Ex. A, ¶ 31).

On September 4, 2019, Defendants Thomson and Combs, accompanied by Defendant Karch, went to the Plaintiff's home and served the warrant on Plaintiff Antoinette Maczko ("AM"), Sally Smith ("SS"), and KR. At the time of the search, only KR, AM and SS were home. Plaintiffs maintain that Defendants Thomson and Combs searched dresser drawers, underwear drawers, medicine cabinets, computer desk cabinets, trash, yard, basement, and burn bin. (Ex. A, ¶¶ 37-38). Defendants Thomson and Combs found two kittens, a rabbit, a dog, and two birds. Defendant Thomson allegedly threatened Plaintiffs SS, AM, and KR with arrest and imprisonment if they did not surrender their pets. Plaintiffs surrendered the animals to the Defendant humane society officers. Plaintiffs claim that a check for $320 was missing from a computer desk drawer following the human police officers' search.

The animals, in the care of WAHS, were spayed and neutered.

On September 5, 2019, a Children and Youth Services ("CYS") worker arrived at Plaintiffs' home to investigate a Complaint. Plaintiffs believe that Defendants made the Complaint to CYS.  CYS closed its investigation.

On September 25, 2019, Defendant Thomson charged Plaintiffs KR and Michael Rotellini ("MR") with "Cruelty to Animals" and "Neglect of Animals – Vet Care" in connection with the death of their puppy.  Plaintiffs' pets were returned to them on October 1, 2019.  The charges as to Plaintiffs KR and MR were withdrawn.

Plaintiffs initiated the within civil rights action by filing a Complaint on December 27, 2019.

## III. ALLEGATIONS OF PLAINTIFFS' COMPLAINT

Plaintiffs maintain that Defendant Karch made allegations of animal abuse to harass the Plaintiffs because he is related to them by marriage and their families have an "unstable and volatile relationship." Plaintiffs maintain that Karch conspired with the Defendant Thomson, "who should have known the animal abuse allegations were patently false," to take illegal and improper actions. Plaintiffs' Complaint alleges unlawful search and seizure, malicious prosecution, conspiracy, retaliation, trespass, trespass to chattel, intentional infliction of emotional distress. Plaintiffs seek punitive damages on all counts.

## IV. STANDARD OF REVIEW

When considering a Motion to Dismiss under the Federal Rules of Civil Procedure, the Court must accept as true, well-pled allegations in Plaintiff's Complaint, and construe them in a light most favorable to the Plaintiff. The Court may dismiss the claim if it appears beyond a reasonable doubt, that Plaintiff cannot prove those set of facts in support of a claim which would entitle him to relief. *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014; *Labove v. Lalley*, 809 F.2d 220 (3d Cir. 1987). The Court may consider exhibits attached to the Complaint, and matters of public record. *Benefit Guarantee Corporation v. White Consol. Industries*, 998 F.2d 1192, 1196 (3d Cir. 1993).

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950 (2009) (quoting *Bell Atlantic Corp. v. Twombly*. 550 U.S. 544, 570, 127 S. Ct. 1995, 167 L. Ed. 929 (2007)). Accordingly, "a plaintiff must allege facts sufficient to show that there is 'more than a sheer possibility that a defendant has acted unlawfully.'" *Id*. at 1949. "[A] complaint's 'factual allegations must be enough to raise a right to relief above the speculative level,'". *Ideen v. Straub*, 385 Fed. Appx. 123, 124 (3d Cir.

2010) (quoting *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. A court need not credit bald assertions, unwarranted inferences, or legal conclusions cast in the form of factual averments. Morse v. Lower Merion School District, 132 F.3d 902, 906, n. 8 (3d Cir. 1997).

Ultimately, a defendant may succeed on a Rule 12(b)(6) motion to dismiss "by showing that the factual allegations in a plaintiff's complaint do not state a plausible claim for relief. Pertinent to qualified immunity, a defendant may raise an affirmative defense 'on a rule 12(b)(6) motion if the predicate establishing the defense is apparent from the face of the complaint.'" *Kauffman v. Pennsylvania Society for the Prevention of Cruelty to Animals*, 766 F. Supp.2d 555, 561 (E.D. Pa. 2011) (internal citations omitted).

## V. LEGAL ARGUMENT

### A.     WAHS cannot be liable under § 1983.

Plaintiffs sued WAHS under a theory of *respondeat superior*, alleging that Thomson and Combs acted in their capacity as humane police officers on behalf of and as employees of WAHS. Complaint, (Ex. A, ¶¶ 10-12). Plaintiffs further allege that WAHS failed to adequately train Thomson and Combs in investigation, charging, and prosecuting crimes related to animal neglect. (Ex. A, ¶¶ 42-46).

Counts I and III must be dismissed as to WAHS, as "our Court of Appeals has consistently rejected *respondeat superior* liability and established *Monell* as the only basis for organizational liability under § 1983." *Kauffman*, 766 F. Supp. 2d at 562. Under *Monell v. Dep't of Soc. Srvs.*, 436 U.S. 658, 694 (1978), a local governmental entity may not be sued under § 1983 for its

employees' or agents' infliction of injury. It is only when that injury is a result of a relevant organizational policy or custom, "the implementation of which" results in a putative plaintiff's alleged injury. While Plaintiff may argue that *Monell* applies only to municipal entities, and not, as here, a private non-profit Washington Area Human Society, our Court of Appeals rejected this argument. See, *Kauffman*, 766 F. Supp. 2d at 562 (E.D. Pa. 2011) (*determining that humane society police officers are entitled to qualified immunity when a government actor directs a private individual's behavior*).

This Court must look to the Complaint for allegations that WAHS' actions constituted a policy or custom "evincing willful disregard or deliberate indifference to plaintiffs' rights." *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1155 (3d Cir. 1995).

Further, as to any argument that WAHS failed to train a qualified humane police officer, independently licensed under the Commonwealth's 22 Pa. C.S. § 3710, *et seq.*, "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." To plead a failure to train claim, Plaintiffs must show: "1) the failure to train amounted to deliberate indifference to the rights of the persons with whom the officers came in contact; and 2) the municipality's policy actually caused a constitutional injury." *Bamont v. Pennsylvania Society for the Prevention of Cruelty to Animals*, 163 F. Supp.3d 138, 151 (E.D. Pa. 2016) (internal citations omitted).

In the instant case, Plaintiffs fail to plead any facts to establish that WAHS engaged in a "pattern of constitutional violations" which is "ordinarily necessary" to demonstrate deliberate indifference for purposes of a failure to train. *Bamont,* 163 F. Supp. At 152.

Further, plaintiffs mistakenly contend that WAHS trained Defendants Thomson and Combs. Pursuant to Pennsylvania law, Pa. C.S. §3710, *et seq.*, humane police officers are trained through an eighty-hour college or university program, followed by an examination, and regular continuing education through specifically contracted educational entities. Plaintiffs fail to allege how Defendants Thomson and Combs' training was deficient. Plaintiffs' conclusory statements regarding training will not suffice at the motion to dismiss stage, and their claims against WAHS on a theory of *respondeat superior* must fail.

**B.     Plaintiffs fail to state a claim for unlawful search and seizure.**

Plaintiffs fail to state a viable § 1983 claim for unlawful search and seizure. To state a proper § 1983 claim based upon an invalid search warrant, the plaintiff must allege that 1) the state actor "knowingly and deliberately, or with a reckless disregard for the truth, made false statements or missions that create a falsehood in applying for the warrant," and 2) that "such statements or omissions are material or necessary to the finding of probable cause." *Allen v. SPCA,* 488 F. Supp. 2d 450, 464 (M.D. Pa. 2007).

Plaintiffs allege that Defendant Thomson obtained an invalid search warrant for the seizure of "any and all animals, alive, dead and/or unborn" on Plaintiff James Smith's ("JS") property. (Ex. A, ¶28). Plaintiffs plead that the search warrant was legally insufficient as it relied on an affidavit that lacked probable cause. Copies of the affidavit of probable cause and search warrant are attached hereto collectively as Exhibit "B." Plaintiffs further allege that Defendants WAHS, Thomson, and Combs knew, or should have known, that no abuse was occurring on Plaintiff JS's property because WAHS and Thomson had previously investigated the residence and found no evidence of animal abuse. (Ex. A, ¶30). Plaintiffs further allege that Defendant Thomson knew that Defendant Karch's allegations regarding animal abuse were

materially false and based on the "unstable and volatile relationship between Karch's and Plaintiffs' families. (Ex. A ¶ 32).

Plaintiffs' Complaint fails to plead any facts establishing that Defendants WAHS, Thomson and Combs had any information about Defendant Karch's family relationship with Plaintiffs' family. Plaintiffs do not allege that Defendant Karch had ever before spoken, met, or worked with Defendants Thomson or Combs prior to August 26, 2019. Plaintiffs fail to explain how a prior investigation into animal abuse or neglect obviates or prohibits an investigation of new allegations of animal abuse. Plaintiffs do not identify any false statements made by Thomson in the affidavit of probable cause.

Assuming for purposes of the Motion to Dismiss that these Plaintiffs' allegations are true, which Defendants WAHS, Thomson, and Combs adamantly deny, Plaintiffs' claims are still deficient. The Complaint is silent as to how Defendant Combs should have known that any information in the affidavit of probable cause was materially false. In *Pearson v. Callahan*, 555 U.S. 223 (2009), the Supreme Court held that a Section 1983 plaintiff establishes a Fourth Amendment violation when procuring a search warrant when the following two factors are met: 1) the officer made false statements or omissions in the affidavit either deliberately or with reckless disregard for the truth, and: 2) those misstatements or omissions were material to the judicial officer's finding of probable cause. *Id.*, at 231.

Moreover, a search warrant is obtained only when it is approved by the district attorney and issued by a magistrate judge. In the instant case, the search warrant was issued by Magistrate Judge Havelka. This Court has found it unreasonable to question a magistrate's determination of probable cause:

> [W]hen a warrant is alleged to violate the Fourth Amendment, the fact that a neutral magistrate has issued it "is the clearest indication that the officers

acted in an objectively reasonable manner." *Messerschmidt*, 132 S. Ct. at 1245 (citing United States v. Leon, 468 U.S. 897, 922-23, 104 S. Ct. 3405, 82 L. ed. 2d 677 (1984)). "[I]t is the magistrate's responsibility to determine whether the officer's allegations establish probably cause ... ." Id. (citing Leon, 468 U.S. at 921). Reviewing courts are to "accord significant deference to a magistrate's findings of probable cause to arrest." *Lindenbaum v. Erenius*, 433 F. App'x 119. 120 (3d Cir. 2011) (citing Gates, 462 U.S. at 236) ... "in the ordinary case, an officer cannot be expected to question the magistrate's probably cause determination." *Messerschmidt*, 132 S. Ct. at 1245 (citing Malley, 475 U.S. at 341; Leon, 468 U.S. at 923). Therefore, [p]laintiff must meet the high threshold of demonstrating that no reasonably competent officer would have concluded that [offer's] warrant should not have been issued because [the] affidavit was so "lacking in indicia of probably cause as to render official belief in its exercise entirely unreasonable." Id. "The occasions on which this standard will be met may be rare, but so too are the circumstances in which it will be appropriate to impose personal liability on a lay officer in the face of judicial approval of his actions." *Id.* At 1250.

Plaintiffs' conclusory, bald allegations surrounding the unlawful search and seizure claim fail the pleading requirements set forth in *Twombly* and *Iqbal*. Thus, Plaintiffs fail to plead a viable Fourth Amendment violation against Defendants WAHS, Thomson and Combs.

**C.    Plaintiffs fail to state a claim of malicious prosecution.**

Plaintiffs assert a malicious prosecution claim in violation of 42. U.S.C. § 1983 and the First Amendment against Defendant Thomson only.  Section 1983 of the Federal Code "does not itself contain any substantive provisions, but provides a cause of action against certain violations of federal constitutional rights. "This Court must look to the allegations in the Complaint to "determine whether any federally protected right of plaintiff has been violated." *Ferry v. Bergbigler*, 615 F. Supp. 90, 91 (W.D. Pa. 1985).

"To prove malicious prosecution under § 1983, a plaintiff must show that: 1) the defendants initiated a criminal proceeding; 2) the criminal proceeding ended in plaintiff's favor; 3) the proceeding was initiated without probable cause; 4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and 5) the plaintiff suffered deprivation

of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *DiBella v. Borough of Beachwood*, 407 F.3d 599, 601 (3d Cir. 2005) (citing *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003). Plaintiffs' Complaint satisfies only three of the required prongs of a constitutional malicious prosecution claim.

Plaintiffs' Complaint fails to specify whether the malicious prosecution claim is premised on substantive due process rights or procedural due process rights. The Complaint is completely silent as to any violation of the Plaintiffs' First Amendment rights. What was the Plaintiffs' protected activity? Plaintiffs fail to plead any facts that Defendant Thomson was acting maliciously or for purposes other than executing his duties as a humane police officer investigation violations of animal cruelty laws. Plaintiffs point to no false statement of Defendant Thomson in the affidavit of probable cause. As such, Plaintiffs plead no viable § 1983 malicious prosecution claim against Defendant Thomson, and Count II must be dismissed with prejudice.

**D.     Plaintiffs fail to state a claim of retaliation.**

Plaintiffs allege a §1983 and First Amendment claim for conspiracy as to all defendants. For Plaintiffs to prevail on a First Amendment retaliation claim, they must prove that: 1) he/she engaged in protected activity; 2) the government responded with retaliation; and, 3) the protected activity was the cause of the government's retaliation. *Grimm v. Borough of Norristown*, 226 F. Supp. 2d 606, 636-637, 2002 U.S. Dist. LEXIS 3954, *61-64, 2002 WL 737497; *See Anderson v. Davi*la, 125 F.3d 148 (3d Cir. 1997).

Whether an activity is protected by the First Amendment is a question of law. *Russoli v. Salisbury Township*, 126 F. Supp. 2d 821, 854 (E.D.Pa. 2000) (*quoting Watters v. City of*

*Philadelphia*, 55 F.3d 886, 892 (3d Cir. 1995). Plaintiffs Complaint fails to identify the Plaintiffs' protected activity (speech, religion, assembly, sue for grievance?).

In addition to demonstrating that he/she was engaging in protected activity, the remaining retaliation elements require a plaintiff to show a causal connection between the protected activity and the defendant's conduct: a plaintiff must show that the defendant's conduct was taken in retaliation for the plaintiff's exercise of First Amendment rights. *See Russoli*, 126 F. Supp. 2d at 854-55. The United States Supreme Court has indicated that a plaintiff alleging retaliation for the exercise of constitutionally protected rights must initially show that the protected conduct was a "substantial" or "motivating" factor in the defendant's decision. *See Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S. Ct. 568, 50 L. Ed. 2d 471 (1971). At that point, the burden shifts to the defendant to establish that it would have reached the same decision in the absence of the protected conduct. *See Mt. Healthy*, 429 U.S. 274, 50 L. Ed. 2d 471, 97 S. Ct. 568.

Plaintiffs contend that defendants executed a search warrant in retaliation for "their familial association and the unstable and volatile relationship between Defendant Karch's and Plaintiffs' families." Plaintiffs fail to state any facts as to why Defendants WAHS, Thomson and Combs would have any knowledge of Karch's or Plaintiffs' family drama or how the familial relationship was a substantial or motivating factor in WAHS Defendants' decision to execute a search warrant. Therefore, plaintiffs fail to state a viable retaliation claim, and Count III should be dismissed with prejudice.

### E.   Plaintiffs fail to state a claim of conspiracy.

To make a conspiracy claim under section 1983, a plaintiff must additionally establish the elements of a civil conspiracy. *Ammlung v. City of Chester*, 494 F.2d 811, 814 (3d Cir.

1974)(relying on Pennsylvania civil conspiracy law to set forth the elements). "A civil conspiracy is a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage." *Dice v. Johnson*, 711 F. Supp. 2d 340, 357, 2010 U.S. Dist. LEXIS 43086, *31-33; *quoting Adams v. Teamsters Local 115*, 214 F. App'x 167, 172 (3d Cir. 2007)(nonprecedential)(quoting in part *Hampton v. Hanrahan*, 600 F.2d 600, 620-21 (7th Cir. 1979)(quoted case and internal quotation marks omitted). "The agreement can be shown by direct or circumstantial evidence," *Id.; see also Marulli v. Alloy*, Nos. 04-2869 and 04-2874, 2006 U.S. Dist. LEXIS 73156, 2006 WL 2772553, at *8 (D.N.J. Sept. 23, 2006). But plaintiffs cannot base their claim "solely on suspicion and speculation." *Marulli*, 2006 U.S. Dist. LEXIS 73156, 2006 WL 2772553, at *8.

Once again, Plaintiffs plead no facts regarding an agreement between Karch, Thomson and Combs to commit an unlawful act. Plaintiffs, as discussed above, did not state a claim for unlawful search and seizure or demonstrate how the affidavit of probable cause was lacking. Strangely, Plaintiffs allege that Defendant Karch "made false allegations against the Plaintiff, and remained silent ..." (Ex. A, ¶91).  This allegation argues against any conspiracy.  Cursory conclusions will not support a claim for conspiracy. Therefore, Count IV of Plaintiffs' Complaint must be dismissed as to Defendants Thomson and Combs.

**F.      Failure to plead state law claims (trespass, trespass to chattel and intentional infliction of emotional distress).**

### i. Trespass

"'In Pennsylvania, the common law tort of trespass tracks the Restatement of Torts. One who enters the property of another without the privilege to do so trespasses.'" *Allen v.*

*Millsaps*, 2019 U.S. Dist. LEXIS 26840 at *17 (M.D. Pa. Feb. 19, 2019) (*quoting Woodham v.*

*Dubas,* 256 Fed. App'x 571, 576 (3d Cir. 2007) (*per curium*)(*citing Kopka v. Bell Tel. Co. of Pa*,

371 Pa. 444, 91 A.2d 232, 235-236 (Pa. 1952)). Plaintiffs contend that Defendants Thomson

and Combs entered Plaintiff's property without the Plaintiffs' consent or any privilege to do

so. (Ex. A, ¶ 97).

Plaintiffs admit that Defendant Thomson sought a search warrant. The search warrant

was issued by a neutral magistrate, Magistrate Judge Havelka. As argued above, Plaintiffs

failed to state a claim for unlawful search and seizure. See *Badillo v. Stopko*, 2012 U.S. Dist.

LEXIS 61331 at *21 (D.NJ May 2, 2012) (*dismissing trespass claim because defendants' entry*

*onto plaintiff's property was made pursuant to a valid search warrant*). Thus, Plaintiffs' claim

for trespass fails.

### ii.      Tresspass to Chattels

The tort of trespass to chattels requires: 1) a claimant; 2) a claim; 3) wrongful conduct;

4) effect of wrongful conduct; and, 5) intention.  The claim or remedy is not necessarily for the

full value of the chattel, as in conversion; instead, it is for the actual loss or harm caused, which

may or may not be the full value. See Restatement § 222A, comment c. If there is a dispossession,

some courts award nominal damages. See Prosser, supra, § 14, p. 77; Restatement § 222,

comment a. As stated in Prosser, supra, § 14, p. 76:

> "Its [trespass to chattels] chief importance now is that there may be recovery
> where trespass would lie at common law, for interferences with the
> possession of chattels which are not sufficiently important to be classed as
> conversion, and so to compel the defendant to pay the full value of the thing
> with which he has interfered. Trespass to chattels survives today, in other
> words, largely as a little brother of conversion."

*Spickler v. Lombardo*, 1977 Pa. Dist. & Cnty. Dec. LEXIS 309, *20-22, 3 Pa. D. & C.3d 591, 606-608.

Plaintiff fails to plead a viable claim for trespass to chattel. "The Pennsylvania Supreme Court defines conversion as 'an act of willful interference with a chattel, done without lawful justification, by which any person entitled thereto is deprived of use and possession." *Norriton East Realty Corp. v. Central-Penn Nat'l Bank*, 254 A.2d 637, 638 (Pa. 1969). Plaintiffs claim that Defendants Thomson and Combs executed a search warrant to seize animals on Plaintiff JS' property. While Plaintiffs allege that the search warrant was invalid due to lack of probable cause, Plaintiffs failed to state a claim for wrongful search and seizure. Any taking of Plaintiffs' property would have been subject to the search warrant, and thus such taking occurred with lawful justification. Moreover, Plaintiffs surrendered their pets. Defendants Thomson and Combs were authorized by Pennsylvania law to seize evidence associated with violations of animal cruelty laws including the animals, which were the subject of said violations. 18 Pa. Cons. Stat. § 5553. The Plaintiffs claim for trespass to chattels must be dismissed with prejudice.

### iii.    Intentional Infliction of Emotional Distress

Plaintiffs fail to state a claim for intentional infliction of emotional distress. The Pennsylvania Supreme Court has never adopted the tort of intentional infliction of emotion distress as Pennsylvania law. See, e.g. Taylor v Albert Einstein Med. Ctr., 754 A.2d 650, 652 (Pa. 2000) (noting "we have never expressly recognized a cause of action for intentional infliction

of emotional distress, and thus have never formally adopted [Section 46] of the Restatement [(Second) of Torts]," which sets forth the elements of a cause of action). "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." *See Kazansky v. King David Mem'l Park*, 527 A.2d 988, 989 (Pa. 1987) (rejecting the adoption of § 46 of the Restatement, while noting that the facts in this case fail to satisfy the tort as enunciated in the Restatement.

The Superior Court has held that the "conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decadency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Buczek v. First National Bank of Mifflintown,* 531 A. 2d 1122, 1125 (Pa. Super. 1987).   Plaintiffs fail to plead outrageous conduct that is utterly intolerable in a civilized society. Society looks to protect animals, so the execution of a search warrant to seize animals from a neglectful situation, as here, is hardly shocking to civilized society. The intentional infliction of emotional distress claim should be dismissed with prejudice.

**G.     Defendants Thomson and Combs are entitled to qualified immunity.**

The Pennsylvania legislature has made it clear that humane society police officers such as Defendants Thomson and Combs are generally protected from civil liability.

> **(a) General Rule.** --A humane society police officer acting in good faith and and within the scope of the authority provided under this subchapter **shall not be liable for civil damages** as a result of an act or omission in the course of an investigation or enforcement action.
>
> **(b) Nonapplicability.** -- Subsection (a) shall not apply to an act of omission intentionally designed to harm or to an act or omission that constitutes gross negligence or willful, wanton or reckless conduct.

18 Pa. C.S.A. § 5557 (West) (as amended and effective August 28, 2017) (emphasis added).

Plaintiffs' Complaint fails to trigger Section (b), as argued *supra*. Plaintiff has not stated a claim for unlawful search and seizure, malicious prosecution, conspiracy, retaliation, trespass, trespass to chattel, or intentional infliction of emotional distress (not adopted by Pennsylvania law) against Defendants Thomson and Combs. Therefore, Plaintiffs' Complaint must be stricken in its entirety.

Plaintiffs cannot argue that their claims are couched in federal law and constitutional rights, preempting Pennsylvania law. Plaintiffs' Complaint must still be dismissed. Qualified immunity protects officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The test for qualified immunity is whether "the contours of" Plaintiffs' asserted rights were "sufficiently clear that a reasonable official would understand that what he is doing violates that right" i.e. whether "in the light of pre-existing law, the unlawfulness" of "an official action is ... apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *see also*, *Wilson v. Layne*, 526 U.S. 603, 615 (1999) ("whether a reasonable officer could have believed that [his actions were] lawful, in light of clearly established law and the information [he] possessed.")

The Court must award qualified immunity if the official: 1) did not commit a constitutional violation; or, 2) the right at issue was not clearly established at the time of the alleged violation. *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808 (2009).

Qualified immunity gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law. *Gilles v. Davis*, 427 F. 3d 197, 203 (3d Cir. 2005). This occurs regardless of whether the official's error is a mistake of law, a mistake of fact, or a mistake on mixed questions of law and fact. *Pearson*, supra.

As discussed above, Plaintiffs have not stated any claim of a constitutional violation against Defendants Thomson and Combs. Officers Thomson and Combs were exercising the powers granted to them under Pennsylvania animal cruelty laws. Thus, these humane police officers are entitled to qualified immunity, under either Pennsylvania or federal law.

**H.     Plaintiffs' request for punitive damages should be stricken.**

"Punitive damages are available against a state actor, under Section 1983, upon a showing of reckless or callous disregard or indifference to the plaintiff's rights and safety, as well as intentional violations of law." *Moody v. Philadelphia Hous. Auth.*, 673 A.2d 14, 20 (Pa. Commw. Ct. 1996), *citing Smith v. Wade*, 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983); *Keenan v. City of Philadelphia*, 983 F.2d 459 (3ᵈ Cir. 1992). Plaintiffs have failed to plead any facts establishing that Defendants Thomson or Combs showed a reckless or callous disregard or indifference to Plaintiffs' rights and safety or intentional violations of the law.

As argued above, Plaintiffs have failed to state a § 1983 claim for unlawful search and seizure, malicious prosecution, retaliation, conspiracy, trespass, trespass to chattel, or intentional infliction of emotional distress against Defendants; thus, their request for punitive damages against Defendants WAHS, Thomson, and Combs must be dismissed.

**VI.     CONCLUSION**

For all of the reasons enumerated and examined above, Plaintiffs' Complaint must be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

Respectfully submitted,

DICKIE, McCAMEY & CHILCOTE, P.C.

Date:                                        By:     /s/ Janet K. Meub
                                                     Janet K. Meub, Esquire
                                                     PA I.D. #88724

                                                     Two PPG Place, Suite 400
                                                     Pittsburgh, PA  15222-5402

                                                     *Attorneys for Defendants, WASHINGTON*
                                                     *AREA HUMANE SOCIETY, GLEN THOMSON*
                                                     *AND MARANDA COMBS*

### CERTIFICATE OF SERVICE

I, Janet K. Meub, hereby certify that a true and correct copy of the foregoing **Brief in Support of Motion to Dismiss** has been served upon all counsel of record, via CM/ECF filing, this 10th day of March, 2020.

DICKIE, McCAMEY & CHILCOTE, P.C.

By:   /s/ Janet K. Meub
        Janet K. Meub, Esquire
        PA I.D. #88724

        Two PPG Place, Suite 400
        Pittsburgh, PA  15222-5402

*Attorneys for Defendants, WASHINGTON AREA HUMANE SOCIETY, GLEN THOMSON AND MARANDA COMBS*

10070973.1