IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES SMITH, *et al.*, | |
| *Plaintiffs*, | Civil Action No. 2:19-cv-1672 |
| v. | Hon. William S. Stickman IV |
| WASHINGTON AREA HUMANE SOCIETY, *et al.*, | |
| *Defendants*. | |

**MEMORANDUM OPINION**

WILLIAM S. STICKMAN IV, District Judge

Plaintiffs have asserted several claims under 42 U.S.C. § 1983 and Pennsylvania law arising out of an allegedly illegal search and seizure of pets and other property from their home, as well as a subsequent criminal prosecution that was dismissed shortly after initiation. Defendants have moved to dismiss all of the allegations in Plaintiffs' Complaint. (ECF Nos. 7 and 13). For the reasons set forth below, the Motions to Dismiss will be granted in part and denied in part. Plaintiffs will be given leave to file an amended complaint within twenty-one days.

**FACTUAL AND PROCEDURAL HISTORY**

Plaintiffs in this action are James Smith ("JS"), Sally Smith ("SS"), Kayla Rotellini ("KR"), Michael Rotellini ("MR") and Antionette Maczko ("AM"). JS and SS are married and the parents of KR. KR is married to MR. AM is SS's mother. Plaintiffs live together in a home in Washington County, along with KR's and MR's minor children and a number of pets. It was the pets that gave rise to the chain of events leading to this lawsuit.

1

On August 25, 2019, a puppy owned by KR and MR escaped from their home. Shortly thereafter, it was found by Lacey Simpson ("Simpson"). While not specifically alleged, the Complaint suggests that Simpson contacted either the Jefferson Township Police Department or Defendant Gene Karch ("Karch") about the puppy. Karch, the Chief of Police in Jefferson Township, allegedly contacted Defendants Glen Thomson ("Thomson") and Maranda Combs ("Combs"), humane officers from the Defendant Washington Area Humane Society ("WAHS") about the puppy.

Plaintiffs allege that Karch identified the puppy as belonging to KR and MR. He was able to do so, they claim, because he is related to them by marriage. It is alleged that Karch and his family have "an unstable and volatile history" with Plaintiffs' family. Perhaps because of this history, Plaintiffs aver that Karch made "false allegations of animal abuse against the Plaintiffs" in order to "harass and attack" them.[1]

Ultimately, Ms. Simpson brought the puppy to WAHS, where it was diagnosed with a contagious disease and euthanized. Nobody from WAHS ever contacted Plaintiffs to report that the puppy had been found or to discuss its health, even though, because of Karch's representations, WAHS was aware that KR and MR owned the puppy.

Plaintiffs allege that on or about September 4, 2019, Thomson submitted an affidavit of probable cause containing false allegations in order to obtain a warrant for the search of Plaintiffs' residence and the seizure of "any and all animals, alive, dead and/or unborn." The warrant was executed by Thomson and Combs the same day. Plaintiffs allege that Thomson and

---

[1] Plaintiffs aver that there had been previous false allegations of animal abuse lodged against them. They claim that WAHS "through other unnamed humane officers had previously investigated false animal abuse allegations against the Plaintiffs, which were proven to be unfounded and patently false." Such allegations included claims that they engaged in "burning animals and drinking animal blood." (ECF No. 1, ¶¶ 23-24).

2

Combs searched the whole house, including "SS's underwear drawers, closets, medicine cabinets, inside computer desk drawers, trash, yard and burn bin." (ECF No. 1, ¶ 37). Thomson and Combs seized various pets, including a rabbit, kittens, birds and JS's 19-year old dog. (ECF No. 1, ¶ 39). Plaintiffs accuse Thomson and Combs of illegally taking $320.00 in cash from a desk drawer during the search. (ECF No. 1, ¶¶ 49-51).

On September 25, 2019, Thomson charged KR and MR with "cruelty to animals" and "neglect of animals—Vet care" in connection with the death of their puppy. (ECF No. 1, ¶ 55). However, on October 1, 2019, all of Plaintiffs' pets had been returned to them (all of them had been spayed and/or neutered by WAHS). On October 11, 2019, all charges against them were dropped.[2] (ECF No. 1, ¶¶ 58-59).

Plaintiffs filed this action on December 27, 2019. Counts I through IV assert claims under 42 U.S.C. § 1983 for Unlawful Search and Seizure, Malicious Prosecution, Retaliation and § 1983 Conspiracy. Counts V through VII assert claims under Pennsylvania state law for Trespass, Trespass to Chattel and Intentional Infliction of Emotional Distress. Defendants have moved to dismiss claims asserted against them. The motions have been fully briefed and are ripe for disposition.

## STANDARD OF REVIEW

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A plaintiff must allege sufficient facts that, if accepted as true, state a claim for relief that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also*

---

[2] Plaintiffs allege that Thomson, Combs and/or Karch made unfounded and unsupported allegations to Child and Youth Services ("CYS") after they completed the search and seizure. CYS investigators visited the home on September 5, 2019. CYS later issued a letter to Plaintiffs telling them that the investigation was closed.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must accept all well-pleaded factual allegations as true and view them in the light most favorable to the plaintiff. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

The "plausibility" standard required for a complaint to survive a motion to dismiss is not akin to a "probability" requirement but asks for more than sheer "possibility." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In other words, the complaint's factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations are true even if doubtful in fact. *Twombly*, 550 U.S. at 555. Facial plausibility is present when a plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendants are liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Even if the complaint's well-pleaded facts give rise to a plausible inference, that inference alone will not entitle a plaintiff to relief. *Id.* at 682. The complaint must support the inference with facts to plausibly justify that inferential leap. *Id.*

"[A] motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011). Although the Court must accept the allegations in the Complaint as true, it is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citations omitted).

ANALYSIS

A.     **WAHS's Motion to Dismiss will be granted without prejudice for failure to plead a plausible *Monell* claim at Counts I and III.**

WAHS is named in only two counts—Count I (unlawful search and seizure) and Count III (retaliation). Both counts are asserted under 42 U.S.C. § 1983. § 1983 provides a cause of action against any person who, acting under the color of state law, deprives another of his or her federal rights, and, under certain circumstances, the municipal employer and/or supervisor of such a person. To obtain relief under § 1983, a plaintiff must make a two-prong showing: (1) that s/he suffered a violation of a right secured by the Constitution and laws of the United States; and (2) that the alleged deprivation was committed by a person acting under the color of state law. *See Karns v. Shanahan*, 879 F.3d 504, 520 (3d Cir. 2018) (citation omitted).

Private party actors are not liable under § 1983. Rather, "Section 1983 subjects to liability those who deprive persons of federal constitutional or statutory rights 'under the color of any statute, ordinance, regulation, custom or usage' of a state." *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (quoting 42 U.S.C. § 1983). Thus, to maintain an action under § 1983, a plaintiff "must allege that she was deprived of a federal constitutional or statutory right by a state actor." *Id.* (citation omitted). In examining WAHS's Motion to Dismiss, a threshold issue is whether WAHS was a municipal entity or was otherwise acting under the color of state law. The Complaint merely asserts that WAHS "is a Pennsylvania non-profit organization, society or association" that "employs a humane investigation officer pursuant to 22 Pa. C.S.A. § 3701." (ECF No. 1, ¶ 10). The Court must first determine whether WAHS was a state actor.

Under the Pennsylvania Crimes Code, certain humane societies or associations may employ agents who "shall have the same powers to initiate criminal proceedings provided for police officers by the Pennsylvania Rules of Criminal Procedure." 18 Pa. C.S.A. § 5551.

5

Humane society police officers are governed by the provisions of the Pennsylvania Code dealing with detectives and private police officers and are, specifically, codified at 22 Pa. C.S.A. § 3701 *et seq.* A humane society may appoint an agent to be a humane society police officer by applying to a court of common pleas. 22 Pa. C.S.A. § 3704. Once appointed, the humane society police officer has the authority to act as provided by 18 Pa. C.S.A. § 5551. Plaintiffs have pled that WAHS is a nonprofit organization that employs a humane investigation officer pursuant to 22 Pa. C.S.A. § 3701. This is sufficient to maintain a claim against WAHS as a state actor under § 1983. But, that is not the end of the inquiry as to whether Plaintiffs have sufficiently pled their claims against WAHS.

A municipal entity cannot be held liable pursuant to Section 1983 under the theory of *respondeat superior*. *Monell v. Dep't Soc. Servs. of N.Y.*, 436 U.S. 658, 691 (1978). Instead, municipal entities, including school districts, may only be held liable under Section 1983 on (1) an express municipal policy, such as an ordinance, regulation, or policy statement, *id.* at 694, (2) a "widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a "custom or usage" with the force of law,'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-68 (1970)), or (3) the decision of a person with "final policymaking authority." *Id.* at 123. *See also Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-83 (1986). A municipal entity may be held liable under Section 1983 only when the enforcement of the municipal policy or practice was the "moving force" behind the violation of a plaintiff's federal protected right. *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 400 (1997); *City of Canton v. Harris*, 489 U.S. 378, 388-89 (1989). Finally, it is not sufficient for a plaintiff to merely offer "threadbare recitals of the elements needed for a *Monell* claim." *Anderson v. City of*

*Philadelphia*, No. 16-5717, 2017 WL 550587, *6 (E.D. Pa. Feb. 10, 2017) (citation omitted). A *Monell* claim cannot survive a motion to dismiss where it merely repeats the necessary *Monell* elements and contains no factual support as to a policy, custom, or policymaker responsible for the alleged constitutional violation. *Wood v. Williams*, 568 F. App'x 100, 104 (3d Cir. 2014).

Plaintiffs' Complaint fails to assert a legally tenable *Monell* claim against WAHS. It alleges only scant allegations about acts or omission of WAHS relative to their *Monell* claim. They plead:

> 42. Defendant WAHS has a duty to properly train, control, discipline and/or supervise its agents, Defendants Thomson and Combs.
>
> 43. More specifically, Defendant WAHS has a duty to properly train the named Defendants on proper search warrants and probable cause.
>
> 44. Defendant WAHS failed to properly train, control, discipline and/or supervise its agents, Defendants Thomson and Combs, in the proper method of obtaining search warrants.
>
> 45. Defendant WAHS's failure to properly train, control and/or supervise Defendants Thomson and Combs in the proper method of obtaining search warrants created a substantial risk of the constitutional violations identified herein.
>
> 46. Plaintiff believes, and therefore avers, that Defendant WAHS allowed the named Defendants to engage in a course, pattern, or practice of improper, unlawful and malicious conduct, and that it ratified, endorsed, acquiesced to, or approved of the named Defendants' unlawful conduct.

(ECF No. 1, ¶¶ 42-46). The Complaint also alleges that "Defendant WAHS provided Defendants Thomson and Combs with resources and otherwise aided and abetted Defendants' unlawful search and seizures" (ECF No. 1, ¶ 63, in relevant part); and that Defendants Thomson and Combs performed an illegal search and seizure "through their authority and training provided by Defendant WAHS." (ECF No. 1, ¶ 81, in relevant part). These allegations are general, vague and, indeed, threadbare recitals of the elements needed for a *Monell* claim. They

7

contain no factual support as to any policy, custom, or policymaker responsible for the alleged constitutional violation. Plaintiffs are not required to offer evidence sufficient to prove their case in their Complaint, but they have to do more than merely recite the elements of a *Monell* claim. They have to plead more than they have.

In claims arising under § 1983, a district court must provide a plaintiff with leave to amend a claim subject to dismissal unless the court finds that amendment would be futile. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245-46 (3d Cir. 2008). Here, the Court finds that although Plaintiffs have, at this point, failed to assert a cognizable *Monell* claim against WAHS, it does not find that amendment would be futile. It is possible that Plaintiffs will be able to point to specific acts or omissions that could be sufficient to maintain a *Monell* claim. As such, Plaintiffs' claims against WAHS will be dismissed without prejudice. Plaintiffs are given leave to file an amended complaint within twenty-one days.

**B. Plaintiffs have adequately asserted a Fourth Amendment claim at Count I.**

Count I alleges that Defendants committed an illegal search of Plaintiffs' residence and illegally seized their property. Although the search and seizure was conducted pursuant to a warrant, Plaintiffs allege that the warrant was faulty because it was based on false information provided by certain defendants. The existence of a warrant does not preclude a claim for illegal search and seizure if the search warrant was invalid as a matter of law because it was based on false statements included in the affidavit of probable cause. *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d. Cir. 1997). To state a § 1983 claim based upon an allegedly invalid search warrant, "the plaintiff must allege (1) the state actor knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for the warrant, and (2) that 'such statements or omissions are material or necessary to

the finding of probable cause.'" *Allen v. Pa. Soc'y for Prevention of Cruelty to Animals*, 488 F. Supp. 2d 450, 464 (M.D. Pa. 2007) (quoting *Wilson v. Russo*, 212 F.3d 781, 786-87 (3d Cir. 2000)). A false assertion of fact "is made with reckless disregard when 'viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported.'" *Wilson*, 212 F.3d at 788 (quoting *United States v. Clapp*, 46 F.3d 795, 800 (8th Cir. 1995)).

Plaintiffs allege that Karch made "false claims" against them, which "initiated the chain of events that eventually led to the constitutional violations suffered by the Plaintiffs." (ECF No. 1, ¶ 62). These "false claims" are alleged to have been unspecified "false allegations of animal abuse against the Plaintiffs which Defendant knew, or should have known were patently false." (ECF No. 1, ¶ 19). These "false claims" are suggested to have been made to Thomson and that Thomson "knew, or should have known, were materially false." (ECF No. 1, ¶ 32). Thomson used these allegedly false allegations to obtain a warrant, which was executed by him, Combs and Karch. (ECF No. 1, ¶¶ 32-36). Plaintiffs assert that Thomson and Combs knew or should have known that there was no animal abuse in Plaintiffs' home because they had previously been investigated and exonerated for claims of animal abuse.

At the pleading stage, Plaintiffs have adequately pled a claim of illegal search and seizure against Karch, Thomson and Combs. They have pled that Karch, Thomson and Combs knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that created a material falsehood in applying for the warrant. They have also alleged that these false statements were critical to their obtaining the warrant. There is no question that the allegations in the Complaint are not well developed vis-à-vis the way that Karch's misrepresentations influenced Thomson to seek a warrant and the manner in which that warrant

9

was obtained. However, Plaintiffs do not have to prove their case in their Complaint. Whether they ultimately adduce enough evidence to proceed to a jury is a question for another day. They will be given the opportunity to explore their claims in discovery. Karch, Thomson and Combs' Motions to Dismiss Count I is denied.

### C. The First Amendment/Malicious Prosecution claim at Count II is dismissed without prejudice.

At Count II, Plaintiffs KR and MR claim that Thomson (alone) violated their rights under the First Amendment by initiating a malicious prosecution against them. They allege that Thomson initiated a baseless prosecution against them without probable cause and that it was a result of "their familial association and the unstable and volatile relationship between Karch's and Plaintiffs' families, in direct violation of the First Amendment of the United States Constitution." (ECF No. 1, ¶ 76).

A malicious prosecution claim under § 1983 differs from its common law counterpart in that a plaintiff must plead that a specific constitutional right was violated by the prosecution. *Gallo v. City of Philadelphia*, 161 F.3d 217, 221-23 (3d Cir. 1998) (citing *Albright v. Oliver*, 510 U.S. 266, 274 (1994)). While the Fourth Amendment is most commonly cited in support of a § 1983 malicious prosecution claim, it is possible for one to be based on other Amendments. *See Torres v. McLaughlin*, 163 F.3d 169, 173 (3d Cir. 1998) ("We do not read *Albright* to hold that a malicious prosecution claim can only be based in a Fourth Amendment violation. Accordingly, a section 1983 malicious prosecution claim may also include police conduct that violates the Fourth Amendment, the procedural due process clause or other explicit text of the Constitution.") A violation of the First Amendment may serve as the constitutional basis of a malicious prosecution claim. *Olasz c. Welsh*, 301 F. App'x 142, 144-45 (3d Cir. 2008).

The threshold question in determining whether Plaintiffs KR and MR have pled a cognizable malicious prosecution claim under § 1983 is whether they have asserted a violation of an explicit constitutional provision relating to the prosecution. They allege that Defendant Thomson initiated the prosecution against them maliciously and without probable cause and as "a direct and proximate result of their familial association and the unstable and volatile relationship between Karch's and Plaintiffs' families, in direct violation of the First Amendment to the United States Constitution." (ECF No. 1, ¶ 76). In other words, KR and MR allege that Thomson initiated the prosecution at the behest of Karch because of the "unstable and volatile history" between Karch and KR and MR, to whom Karch is related by marriage. These allegations are insufficient to maintain a plausible claim based on the First Amendment.

Plaintiffs correctly argue that the First Amendment protects the right to form intimate associations. *Pi Lambda Phi Fraternity, Inc. v. Univ. of Pittsburgh*, 229 F.3d 435, 441 (3d Cir. 2000) ("The Supreme Court has held that there are two kinds of freedom of association that are constitutionally protected: intimate association and expressive association."). "The right of intimate association involves an individual's right to enter into and maintain intimate or private relationships free of state intrusion." *Id.* at 441. "Family relationships are the paradigmatic form of protected intimate associations, as they 'by their nature involve deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences and beliefs but also distinctively personal aspect of one's life.'" *Id.* at 441-42 (quoting *Roberts v. U.S. Jaycees,* 468 U.S. 609, 619-20 (1984)).

There is no doubt that the law protects MR's and KR's right to form and maintain an intimate association—their marriage and family. Their malicious prosecution claim fails, however, because they did not plausibly assert a violation of this right. All they pled was that

there existed a strained family relationship between Karch and their family and that based on that strained relationship Karch convinced Thomson to initiate a baseless prosecution. They do not allege that they were prosecuted because of their attempt to associate with one another. Nor do they allege that the prosecution was designed to hinder their ability to do so. Even reading the Complaint in a light most favorable to Plaintiffs, the Court does not see a plausible claim that the prosecution violated the First Amendment. Count II will, therefore, be dismissed. The dismissal will be without prejudice, and Plaintiffs will be afforded an opportunity to amend their Complaint within twenty-one days.

### D. Plaintiffs have not pled a plausible retaliation claim under the First Amendment at Count III.

Count III asserts that Defendants engaged in actionable retaliation under § 1983 against Plaintiffs. Specifically, Plaintiffs argue that Defendants' conduct (including the allegedly illegal search and seizure and malicious prosecution) was in retaliation for the Plaintiffs' "familial association and the unstable and volatile relationship between Karch's and Plaintiffs' families, in direct violation of the First Amendment of the United States Constitution." (ECF No. 1, ¶ 82).

"A claim for retaliation for the exercise of First Amendment rights requires three things: a constitutionally protected activity, a governmental entity retaliating against the plaintiff and a causal relationship between the protected activity and the retaliation." *Myers v. Fayette Cnty.*, No. 20-900, 2020 WL 6047566, at *5 (W.D. Pa. Oct. 13, 2020) (*citing Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 282 (3d Cir. 2004)). The essential analysis of this claim is similar to that employed for the malicious prosecution claim—did Plaintiffs plead a cognizable First Amendment violation that serves as the foundation of their claim? As with the malicious prosecution claim, the Complaint is insufficient to assert a retaliation claim under the First Amendment. Plaintiffs have not pled anything beyond an "unstable and volatile relationship"

12

between them and Karch that would support a First Amendment violation. As with the malicious prosecution claim, Plaintiffs will be afforded the opportunity to amend their Complaint within twenty-one days.

> ### E. In Count IV, Plaintiffs have adequately pled a conspiracy to violate their rights under the Fourth Amendment, but not the First Amendment.

Count IV alleges that Thomson, Combs and Karch conspired to violate Plaintiffs' rights under the Fourth and First Amendments. Plaintiffs plead, in relevant part:

> 88. Plaintiffs believe, and therefore aver, that the named Defendants Thomson and/or Combs knew or should have known, with the exercise of reasonable caution, that the allegations made by Defendant Karch were untrue and provided no probable cause for the unlawful actions of the Defendants Thomson and/or Combs as described more fully hereinbefore above.
>
> 89. Nothwithstanding the foregoing, Defendants Thomson and/or Combs and Defendant Karch conspired to violate the constitutional rights of the Plaintiff as described more fully hereinbefore above.
>
> 90. Plaintiffs believe, and therefore aver, that Defendant Thomson intentionally initiated the prosecution of the Plaintiffs without probable cause as a direct and proximate result of their familial association and the unstable and volatile relationship between Defendant Karch's and Plaintiffs' families, in direct violation of the First Amendment of the United States Constitution.
>
> 91. Defendant Karch made false allegations against the Plaintiff, and remained silent and took no action to deter Defendant Thomson and/or Combs from violating the Plaintiff's rights as aforementioned. The actions and inaction of Defendant Karch were both in furtherance of the conspiracy.
>
> 92. The actions of Defendants Thomson and Combs in seeking, obtaining and executing a search warrant on Plaintiffs' property without probable cause, and the unlawful seizure of Plaintiffs' property, constituted actions in furtherance of the conspiracy.

(ECF No. 1, ¶¶ 88-92).

"To demonstrate a conspiracy under § 1983, a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right 'under color of

law.'" *Parkway Garage, Inc. v. City of Philadelphia*, 5 F.3d 685, 700 (3d Cir. 1993) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970)), *abrogated on other grounds by United Artists Theater Cir., Inc. v. Twp. of Warrington*, 316 F. 3d 392 (3d Cir. 2003). "The elements of a claim of conspiracy to violate federal civil rights are that '(1) two or more persons conspire to deprive any person of [constitutional rights]; (2) one or more of the conspirators performs . . . any overt act in furtherance of the conspiracy; and (3) that overt act injures the plaintiff in his person or property or deprives the plaintiff of any right or privilege of a citizen of the United States . . . .'" *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 294 n.15 (3d Cir. 2018) (quoting *Barnes Foundation v. Twp. of Lower Merion*, 242 F. 3d 151, 162 (3d Cir. 2001)). "To show agreement, he must demonstrate that the state actors named as defendants in the complaint somehow reached an understanding to deny the plaintiff his rights." *Id.* at 295 (quoting *Kost*, 1 F.3d at 185)). A plaintiff does not have to prove an agreement with direct evidence. Rather, a meeting of minds or agreement to conspire may be demonstrated from circumstantial evidence. *Id.* "Such circumstantial evidence may include that the alleged conspirators 'did or said something . . . to create an understanding,' 'the approximate time when the agreement was made, the specific parties to the agreement, the period of the conspiracy of the object of the conspiracy.'" *Id.* (quoting *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178-79 (3d Cir. 2010)). Moreover, where a conspiracy between law enforcement personnel is alleged, "it may manifest as conversations between officers about the incident, allegedly distorted stories that emerged, an awareness of conflicting stories and irregularities in the series of official investigations into the incident." *Id.* (internal quotations omitted). Critically, "inferring mental state from circumstantial evidence is among the chief tasks of

factfinders[.]" *Id.* (quoting *Kedra v. Schroeter*, 876 F.3d 424, 444 (3d Cir. 2017)) (internal quotation marks omitted).

The Court holds that Plaintiffs have adequately pled a conspiracy to violate their rights under the Fourth Amendment, but not the First Amendment. As a threshold matter, as explained above, Plaintiffs have pled a cognizable claim for a violation of the Fourth Amendment relative to the search and seizure of their property. They have not pled a plausible First Amendment claim. Plaintiffs have plausibly pled not only a violation of the Fourth Amendment but, also, that one or more of the Defendants have performed the overt acts that caused the violation and that they have been harmed by the alleged violation.

The critical question is whether Plaintiffs have adequately pled the combination or meeting of minds between Thomson, Combs and Karch. Plaintiffs specifically pled that "Thomson and/or Combs knew, or should have known, with the exercise of reasonable caution, that the allegations made by Defendant Karch were untrue and provided no probable cause," and that they "conspired to violate the constitutional rights of the Plaintiff." (ECF No. 1, ¶¶ 88, 89). They also plead that previous false accusations of animal abuse had been made against the Plaintiffs, which Thomson had reviewed and investigated. (ECF No. 1, ¶¶ 22-25). Nevertheless, they allege that Defendants agreed to initiate another allegedly baseless prosecution against Plaintiffs.

The Court recognizes that the Complaint's allegations about the specific agreement between Plaintiffs are not detailed and fact laden. However, Plaintiffs are not required to prove their case in the Complaint. The Court recognizes that it is particularly difficult to plead facts—before the benefit of discovery—regarding the mindset of alleged conspirators, their communications and any meeting of the minds. The Court will, therefore, allow Count IV to

proceed as to the alleged conspiracy to deprive Plaintiffs of their rights under the Fourth Amendment. Plaintiffs will be given leave to amend their Complaint within twenty-one days with regard to the First Amendment component of Count IV.

### F. Plaintiffs have adequately pled common law claims for Trespass and Trespass to Chattel (Counts V and VI).

Plaintiffs have asserted state-law claims for trespass and trespass to chattel against Karch, Thompson and Combs for entering upon their real property and taking their chattels. Defendants argue that the claims should be dismissed because they were privileged to enter the property and seize Plaintiffs' animals by the warrant that they obtained.

Because the Court is permitting Count I—illegal search and seizure—to proceed, it will do the same for Counts V and VI. If Plaintiffs can demonstrate that the search and seizure was premised upon a warrant that was illegally obtained, their justification defense to these claims will fail. Moreover, they assert that Defendants took property that, ostensibly, was not identified in the warrant - $320.00 in cash. Defendants cannot stand behind the warrant in defense of this claim. As such, the Motion to Dismiss Counts V and VI is denied.

### G. Plaintiffs have not pled a plausible claim for intentional infliction of emotional distress (Count VII).

A claim for intentional infliction of emotional distress ("IIED") requires a plaintiff to plead: (1) extreme and outrageous conduct; (2) intentional or reckless conduct; (3) conduct caused the emotional distress; and (4) severe emotional distress. *M.S. ex rel. Hall v. Susquehanna Twp. School Dist.*, 43 F. Supp. 3d 412, 430 (M.D. Pa. 2014) (citation omitted). A plaintiff must allege physical manifestations of the emotional distress. *Id.* (citing *Reeves v. Middletown Athletic Ass'n*, 866 A.2d 1115, 1122 (Pa. Super. 2004)). It is not enough for a plaintiff to generically plead the elements of a claim for IIED, but rather, sufficient detail must

be asserted to make out a plausible claim. *Id.* at 430-31 ("Although Plaintiffs allege M.S. suffered 'physical harm' as a result of the emotional distress, such a general, non-specific averment has been found insufficient to survive motions to dismiss."); *see also Dobson v. Milton Hershey School*, 356 F. Supp. 3d 428, 439-40 (M.D. Pa. 2018) (holding plaintiff's bald allegations of "physical harm" and "physical manifestations of emotional distress" were not enough, without more, to set forth a plausible IIED claim). Plaintiffs have merely alleged that they suffered unspecified physical injury. This is not enough. Count VII is dismissed.[3]

### H. Defendants Thomson and Combs's invocation of immunity is premature.

Defendants Thomson and Combs argue that they are immune under Pennsylvania statutory law and principles of qualified immunity. The Court cannot make a determination on immunity at this time.

Plaintiffs assert that as humane officers they are statutorily protected from civil liability. The statute provides:

> (a) General Rule.—A humane society police officer acting in good faith and within the scope of the authority provided under this subchapter shall not be liable for civil damages as a result of an act or omission in the course of an investigation or enforcement action.
>
> (b) Nonapplicability.—Subsection (a) shall not apply to an act of omission intentionally designed to harm or to an act or omission that constitutes gross negligence or willful, wanton or reckless conduct.

18 Pa. C.S.A. § 5557. The statute's plain language shows why the Court cannot find that it confers immunity at this stage in these proceedings. The general rule only applies if the humane officer was acing "in good faith." The Complaint specifically pleads that Defendants undertook

---

[3] As a claim arising under the common law, rather than § 1983, the Court is not obligated to give leave to amend. However, because Plaintiffs are being given the opportunity to amend their Complaint, the Court will permit them to provide more detailed allegations of physical manifestations of their emotional distress.

actionable conduct in bad faith and with malicious motives. Indeed, the statute specifically states that its conferral of immunity will not apply to acts of "gross negligence or willful, wanton or reckless conduct." At this stage, Plaintiffs have made allegations of this type of conduct and will have an opportunity to make their case. The Court cannot find that Section 5557 provides immunity.

The Court reaches the same conclusion as to Defendants' attempt to invoke qualified immunity. Defendants themselves state that "qualified immunity protects officials from liability for civil damages *insofar as their conduct does not violate clearly established statutory or constitutional rights* of which a reasonable person would have known." (ECF No. 8, p. 17) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Plaintiffs have plausibly pled that Defendants obtained a legally invalid warrant with false information, perpetrated an illegal search and seizure, and stole money in the course of the search. They may not be able to establish any of these allegations, but they will be given the opportunity to develop and present them. Because Plaintiffs have plausibly asserted a constitutional violation, their invocation of qualified immunity is unavailing.

I.  **Defendants' Motion to Strike Plaintiffs' request for punitive damages is denied.**

As a final matter, Defendants ask the Court to strike Plaintiffs' request for punitive damages. The Court denies that request. Plaintiffs will be given an opportunity to build a record as to Defendants' conduct. Whether the facts so developed can support a claim for punitive damages will be revisited at a future stage in this litigation.

## CONCLUSION

For the reasons set forth above, Defendants' Motions to Dismiss (ECF Nos. 7 and 13) are granted in part and denied in part. An Order of Court will follow.

BY THE COURT:

10/29/20

WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE