**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JAMES SMITH, SALLY SMITH, KAYLA ROTELLINI, MICHAEL ROTELLINI and ANTOINETTE MACZKO,<br><br>Plaintiffs,<br><br>v.<br><br>GENE KARCH, an individual,<br><br>Defendant. | ) | Civil Action No. 2:19-cv-01672-WSS |

**DEFENDANT GENE KARCH'S BRIEF IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12 (b)(6)**

Defendant, Gene Karch, by and through his attorneys, Makel & Associates, LLC, hereby files this Brief in Support of his Motion to Dismiss.

## I. QUESTIONS PRESENTED

**A. SHOULD COUNT I OF PLAINTIFFS' COMPLAINT BE DISMISSED FOR FAILURE TO STATE A CLAIM FOR UNLAWFUL SEARCH AND SEIZURE?**

**SUGGESTED ANSWER: YES**

**B. SHOULD COUNT II OF PLAINTIFFS' COMPLAINT BE DISMISSED FOR FAILURE TO STATE A CLAIM OF RETALIATION?**

**SUGGESTED ANSWER: YES**

**C. SHOULD COUNT III OF PLAINTIFFS' COMPLAINT BE DISMISSED FOR FAILURE TO STATE A CLAIM FOR TRESPASS?**

**SUGGESTED ANSWER: YES**

**D. SHOULD COUNT IV OF PLAINTIFFS' COMPLAINT BE DISMISSED FOR FAILURE TO STATE A CLAIM FOR SLANDER PER SE?**

**SUGGESTED ANSWER: YES**

## II. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs are a multi-generational family (grandmother, husband and wife, daughter and son-in-law) living in a home in Washington County, Pennsylvania, along with two minor children and their pets. *See* Amended Complaint attached hereto as **Exhibit "A."** Defendant Gene Karch ("Chief Karch") is the Chief of Police in Jefferson Township, Washington County. The Washington Area Human Society (WAHS) is a Pennsylvania non-profit corporation and the employer of humane society officers, Glen Thomson ("Thomson") and Maranda Combs ("Combs") who are authorized to conduct investigations of claims of animal neglect and animal cruelty pursuant to 22 Pa. C.S. § 3701, et seq. WAHS, Thomson and Combs were dismissed by stipulation after settling with the Plaintiffs. *See* ECF No. 32.

Plaintiffs' puppy escaped from their home on August 25, 2019. **Ex. A** at ¶12. The puppy was found by Lacey Simpson sometime thereafter. **Ex. A** at ¶13. On August 26, 2019, Chief Karch contacted Thomson and/or Combs identifying the Plaintiffs Kayla Rotellini ("KR") and Michael Rotellini ("MR") as the owners of the puppy found by Lacey Simpson. **Ex. A** at ¶14. Plaintiffs contend that Chief Karch made false allegations of animal abuse to "attack and harass the Plaintiffs" because he is related to the Plaintiffs through marriage; that the families have "an unstable and volatile history" and the statements were "a direct result of, and in retaliation for, their familial association and the animosity between" the two families. **Ex. A** at ¶¶16-20.

Plaintiffs maintain that Thomson should have known that the allegations of animal abuse were patently false because he had previously investigated the Plaintiffs for claims of animal abuse which were proven to be unfounded. **Ex. A** at ¶22. Plaintiffs further explain that in addition to Thomson's investigation, they were previously investigated for animal abuse by "other unnamed humane officers." **Ex. A** at ¶ 23.

On August 28, 2019, Ms. Simpson brought the puppy to WAHS where it was determined to have a Parvo, a contagious virus, and transported to Pittsburgh Veterinary Specialty and Emergency Center ("PVSEC") where it was ultimately euthanized by PVSEC. **Ex. A** at ¶¶ 24-25.

On September 4, 2019, Thomson obtained an "invalid search warrant for the seizure of any and all animals alive, dead, and/or unborn." Ex. A at ¶ 26. Plaintiffs maintain that the search warrant was "legally insufficient because it relied on an affidavit of probable cause that lacked any probably cause." **Ex. A** at ¶ 27. Plaintiffs further allege that the search and seizure was caused by Chief Karch's allegations, which Thomson knew, or should have known were false and were made because of the animosity between the two families. **Ex. A** at ¶ 28.

On September 4, 2019, Thomson and Combs, accompanied by Chief Karch, went to the Plaintiffs' home and served the warrant and executed a search. Ex. A at ¶¶ 29-31. Chief Karch remained in the kitchen with Plaintiff Sally Smith ("SS"), and KR while Plaintiff Antoinette Maczko ("AM") remained in the living room on orders of Thomson, Combs and Chief Karch, while Thomson and Combs searched the home. **Ex. A** at ¶¶ 32-33. Thomson and Combs then seized various pets including kittens, a rabbit and a dog and Plaintiffs claim a check for $320 was missing following the human police officers' search. **Ex. A** at ¶34.

Plaintiffs' further assert (without any supporting facts) that "Defendant Karch, Mr. Thomson and/or Ms. Combs made a complaint to Child and Youth Services ("CYS")…." (**Ex A** at ¶ 35) ostensibly because "on September 5, 2019, a CYS worker arrived to investigate …." **Ex. A** at ¶ 37. Plaintiffs claim this complaint to CYS by Chief Karch or the humane officers "painted Plaintiffs in a false light to members of their community and otherwise defamed Plaintiffs' characters" (**Ex. A** at ¶ 36) which caused "severe emotional distress." **Ex. A** at ¶ 39.

Plaintiffs initiated the within civil rights action by filing a Complaint against WAHS, Thomson, Combs and Chief Karch on December 27, 2019. ECF No. 1

On March 10, 2019 Defendants WAHS, Thomson and Combs file a Motion to Dismiss and Brief in Support. ECF Nos. 7 and 8.

On March 19, 2019 Chief Karch filed file a Motion to Dismiss and Brief in Support. ECF Nos. 13 and 14.

Brief was completed on April 10, 2020 (ECF 19) and WAHS filed a suggestion of death as to Thomson on April 16, 2020. ECF No. 20.

On October 29, 2020, this Court entered an Order and Memorandum Opinion granting in part and denying in part the Defendants' motions. ECF Nos. 21 and 22.

Defendants WAHS, Thomson and Combs filed a Motion for reconsideration asking the Court to clarify its Order (ECF No. 32) which was granted by the Court on November 2, 2020. ECF No. 24.

On December 4, 2020 Plaintiffs filed an Amended Complaint. ECF No. 29.

At some point the Plaintiffs settled with WAHS Thomson and Combs and a Stipulation of Dismissal was filed on January 5, 2021, leaving Chief Karch as the remaining Defendant.

## III. ALLEGATIONS OF COMPLAINT

Plaintiffs assert that Defendant Karch, as Chief of Police, contacted two humane officers employed by the Washington Area Humane Society to identify a lost puppy as belonging to Plaintiffs. Plaintiffs aver that at that time Chief Karch made false allegations of animal abuse. Plaintiffs maintain that Chief Karch did this to "attack and harass" them because he is related to them by marriage and their respective families have an "unstable and volatile history." Plaintiffs go on to assert that Chief Karch and the humane officers should have known the statements of

Chief Karch were false because humane officer Glen Thomson previously investigated allegations that Plaintiffs were burning animals and drinking animal blood, which were proven false; and in addition, "other unnamed human officers had previously investigated" even more allegations of animal abuse which were also proven false. Plaintiffs' entire Amended Complaint is based upon the alleged false accusation of animal abuse by Chief Karch. Plaintiffs' Amended Complaint attempts to allege unlawful search and seizure, retaliation, trespass and slander *per se*.

## III. STANDARD OF REVIEW

In order to survive a Rule 12(b)(6) motion, "a complaint must set forth facts that raise a plausible inference that the defendant inflicted a legally cognizable harm upon the plaintiff." *Guirguis v. Movers Specialty Servs. Inc.*, 346 F. App'x 774, 776 (3d Cir. 2009)(*citing, inter alia, Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) *and Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). All well pleaded facts set forth in the complaint must be accepted as true. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Legal conclusions, however, may be disregarded. *Id.* A pleading does not state a viable claim if it provides only an "unadorned, the-defendant-unlawfully-harmed-me accusation" or contains nothing more than "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678. To determine the sufficiency of a complaint for 12(b)(6) purposes, a court should: 1) identify the elements of the claim(s); 2) review the complaint to strike conclusory allegations; and 3) evaluate whether the elements identified in the first step of the inquiry are sufficiently alleged. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011)(*citing Iqbal, supra*).

In deciding a motion to dismiss, district courts may rely on documents "integral to or explicitly relied upon in the complaint" without converting the motion to dismiss into one for summary judgment. *In re: Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 292-93 (3d

Cir. 1999). "The rationale underlying this exception is that the primary problem raised by looking to documents outside the complaint – lack of notice to the plaintiff – is dissipated where plaintiff has actual notice and has relied upon these documents in framing the complaint." *In re: Burlington Coat Factory Sec. Litig*., 114 F.3d 1410, 1426 (3d Cir. 1997). This dissipation of the problem of lack of notice is doubly appropriate here for this Motion to Dismiss because the affidavit was attached to the previous motions to dismiss the original complaint and the Plaintiffs cannot simply ignore this exculpatory evidence that has been made part of the record of this case. Where the Plaintiffs might have been able to credibly argue that they had a good faith reason to believe and speculate that false statements were made on the affidavit of probable cause, they do not have any such good faith reason to willfully ignore the actual contents of the document they rely upon solely.

## IV. ARGUMENT

### A. Plaintiffs Fail to State a Cause of Action Against Defendant Karch for Unlawful Search and Seizure.

To state a claim for unlawful search and seizure, the Plaintiffs must show Defendants "unreasonably" searched or seized him … initiated their investigation … without reasonable suspicion, or that they searched and seized him without probable cause. *McIntyre v. Liciardello*, CV 13-2773, 2020 WL 605717, at *10 (E.D. Pa. Feb. 7, 2020) *citing United States v. Brown*, 765 F.3d 278, 288 (3d Cir. 2014). Applied to a claim based upon an invalid search warrant, Plaintiffs must allege that 1) the state actor "knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for the warrant," and 2) that "such statements or omissions are material or necessary to the finding of probable cause." Allen v. SPCA, 488 F.Supp.2d 450, 464 (M.D. Pa. 2007).

With respect to Chief Karch, the Plaintiffs allege that he identified the lost puppy as belonging to Plaintiffs KR and MR (**Ex. A** at ¶ 14) and then made false allegations of animal abuse. **Ex. A** at ¶ 16. Plaintiffs appear to plead that Chief Karch's report to Human Officers Thomson and Combs somehow constitute publication to "members of their community" and defamation. **Ex. A** at ¶ 17. Plaintiffs further allege, ostensibly by way of attempting to provide a motivation, that Chief Karch is related to the Plaintiffs by marriage (without identifying the alleged link) and they make an unsupported conclusion that the relationship between Chief Karch's family and the Plaintiffs' family is "unstable and volatile." **Ex. A** at ¶18.

However, the actual affidavit of probable cause relied upon by the Plaintiffs and therefore properly attached hereto as **Exhibit B**, belies the Plaintiffs' claims because there are no allegations of animal abuse at all. Indeed the statements of Chief Karch actually match what the Plaintiffs themselves have pled in their Amended Complaint. The only statements attributed to Chief Karch which Thomson used to obtain the search warrant are as follows:

> On August 26, 2019 at approximately 0811 hours I received a call from the chief of police in Jefferson TWP regarding an abandoned puppy. He in (sic) informed me that the suspect involved was investigated previously for animal cruelty. He also provided contact information for the individual who found the puppy on the road.
>
> On August 27, 2019 Chief Karch provided screenshots of the puppy both from the citizen who found the dog on the road as well as screenshots from the suspects facebook page saying "Meet our newest addition."

**Ex. B**. These are the only statements included in the affidavit of probable cause attributed to Chief Karch and the only statements relied upon by the issuing authority to issue the search warrant. Far from "false allegations of animal abuse" the only reference to animal abuse by Chief Karch is in line with the Plaintiffs' own averments that they were previously investigated for animal abuse. **Ex. A** at ¶¶ 22, 23. The remaining statements of Chief Karch were actually

helpful to the Defendants in that he provided contact information for the person who found the dog and a screenshot of the Defendants' own Facebook page evidencing that the dog was their "newest addition." Compare **Ex. A** at ¶¶ 22 and 23 with **Ex. B**.

The Plaintiffs' entire claim is premised upon what they label a "legally insufficient" and "invalid search warrant" (**Ex. A** at ¶¶ 26, 27) which "was directly premised upon Defendant Karch's false allegations of animal abuse." **Ex. A** at ¶¶ 27. Contrary to these baseless averments the search warrant was issued on the truthful statements "that the suspect involved was investigated previously for animal cruelty" (**Ex. A** at ¶¶ 22, 23 and **Ex. B**) and "screenshots from the suspects facebook page saying 'Meet our newest addition.'" **Ex. B**.

Accordingly, Plaintiffs' bald accusation that Chief Karch made any false statements could never be supported and although this Court opined that Plaintiffs "do not have to prove their case in their Complaint" (ECF No. 21 at p. 10) the Affidavit of probable cause attached hereto and relied upon by the Plaintiff as their *only* basis to allege the search warrant was invalid, proves that no false statements were made and no amount of artful or nebulous pleading can change the fact that there were no false statements made by Chief Karch or anyone that Magistrate Judge Havelka relied on in issuing the search warrant and the Plaintiffs' Count I must be dismissed.

**B. Plaintiffs Fail to State a Cause of Action Against Defendant Karch for Retaliation.**

With respect to the Plaintiffs' Count II, the Plaintiffs allege that the Chief Karch "intentionally initiated the illegal search without probable cause as a direct and proximate result of their familial association in violation of the First Amendment of United States Constitution. **Ex. A** at ¶ 49. To state a claim for First Amendment retaliation, Plaintiffs must show that they: 1) engaged in a constitutionally protected activity; 2) the government responded with retaliation;

and 3) the protected activity was the cause of the government's retaliation. *Grimm v. Borough of Norristown*, 226 F. Supp.2d 606,636-637 (E.D. Pa. 2002). Whether a private citizen's speech is protected under the First Amendment turns on whether the activity involved a matter of public concern or private concern; speech involving matters of private concern are not protected. *See*, *Falco v. Zimmer*, 767 Fed. Appx. 288, 302 (3d Cir. 2019)(unpublished).

However, as explained above, the only basis for the Plaintiffs' claim that the search warrant was "illegal" and "without probable cause" is that the search warrant was based on false statements by Chief Karch, and as shown on **Ex. B**, no false statements were made by Chief Karch to obtain the warrant. Indeed, the affidavit of probable cause reveals that Chief Karch made only minimal, factual statements, which any objectively reasonable officer would rely upon. Accordingly, the Plaintiffs cannot plead retaliation.

Moreover, in the Memorandum Opinion, this Court recognized that "[a]ll [Plaintiffs']was that there existed a strained family relationship between Karch and their family and that based on that strained relationship Karch convinced Thomson to initiate a baseless prosecution. They do not allege that they were prosecuted because of their attempt to associate with one another. Nor do they allege that the prosecution was designed to hinder their ability to do so." ECF No. 21 at p. 12. In their Amended Complaint Plaintiffs still fail to allege a plausible claim for retaliation because all they can allege in addition to what was originally pled is that Chief Karch made "false allegations of animal abuse … in retaliation for, their familial association …." **Ex. A** at ¶ 20. Simply adding the phrase "in retaliation for, their familial association" still does not plead that they were prosecuted for it (since Chief Karch did not prosecute them) and they do not plead anywhere, because they cannot, how the prosecution was designed to hinder their ability to associate.

Accordingly, the Plaintiffs' Count II must be dismissed.

**C. Plaintiffs Fail to State a Cause of Action for Trespass Under State Law.**

This Court permitted Plaintiffs' state-law trespass claims to proceed because the Court permitted Count I – illegal search and seizure – to proceed and "[i]f Plaintiffs can demonstrate that the search and seizure was premised upon a warrant that was illegally obtained, their justification defense to these claims will fail." ECF No. 21 at p. 16. As demonstrated above, Plaintiffs cannot demonstrate that the warrant was illegally obtained because the basis for their claim that was illegal because it contained false statements is patently wrong -the only statements contained therein are truthful as admitted in their own pleading. To the extent this Court permitted this claim to proceed on the averment that "Defendants took property that, ostensibly, was not identified in the warrant - $320.00 in cash," there are no averments that Chief Karch took or even had opportunity to take Plaintiffs' money.

In addition, Chief Karch was present in the Plaintiffs' home pursuant to a valid request for an assist from WAHS to assist in the execution of a search warrant. *See* Complaint Report attached hereto and incorporated herein as **Exhibit C**. Accordingly, Plaintiffs' Count III must be dismissed.

**D. Plaintiffs Fail to State a Cause of Action for Slander Per Se**

> In a Pennsylvania state law action for defamation, Plaintiff must establish (1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) an understanding by the reader or listener of its defamatory meaning; (5) an understanding by the reader or listener of an intent by the defendant that the statement refers to the plaintiff; (6) special harm resulting to the plaintiff from its publication; and (7) abuse of a conditionally privileged position. A statement is defamatory "if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." Under Pennsylvania law, it is for the court to determine whether the statement at issue is capable of defamatory meaning.

***

> A plaintiff may succeed in a claim for defamation absent proof of special harm where the spoken words constitute slander per se. *Espinosa*, 749 F.Supp. at 677. There are four categories of words that constitute slander per se: words that impute (1) criminal offense, (2) loathsome disease, (3) business misconduct, or (4) serious sexual misconduct. *Id.* (citing Restatement (Second) of Torts § 570 (1977)).

*Pennoyer v. Marriott Hotel Services, Inc.*, 324 F.Supp.2d 614, 618 (E.D.Pa.,2004) (citations and internal quotation marks omitted). In this case, the Plaintiffs attempt to state a cause of action for slander *per se* claiming Chief Karch made false statements of animal abuse regarding them. **Ex. A** at ¶ 59 (citing ¶¶ 16, 17, 36 and 37). Notwithstanding the fact that Chief Karch made no false statements (*see* **Ex. B**), the only persons Plaintiffs allege Chief Karch made these statements to are the two humane officers Thomson and Combs. **Ex. A** at 14. There are no averments that Chief Karch published these statements to anyone else. "[S]tatements made by private parties solely to law enforcement officials in which an accusation of crime is made for the purpose of inducing prosecution of criminal charges are absolutely privileged as statements preliminary to judicial proceedings." *Pennoyer* 324 F.Supp. at 619 (citation omitted). "This absolute privilege applies even where such statements ultimately prove to be false or maliciously motivated." *Abraham v. Greater New Castle Community Federal Credit Union*, 2016 WL 1161217, at *3 (W.D.Pa., 2016) (citation and internal quotation marks omitted). Thus Chief Karch's statements to officers Thomson and Combs are absolutely privileged.

Moreover, Plaintiffs have pled that the WAHS humane officers have investigated them at least twice before and the claims were determined to be "unfounded," contradicting their suggestion that their reputation in the community could be harmed by statements to WAHS officers. **Ex. A** at ¶¶ 22, 23.

Because the statements by Chief were true (that Plaintiffs were previously investigated) and those statements are entitled to absolute immunity, Count IV must be dismissed.

**E. Defendant Karch is Entitled to Qualified Immunity.**

In its Memorandum Opinion, this Court denied Chief Karch's defense of qualified immunity so Plaintiffs could have the opportunity to develop and present facts to support that the warrant was legally invalid if it was obtained with false information. ECF No. 21 at p. 18. As proved by **Ex. B**, the warrant was obtained with undeniably true information. Accordingly, pursuant to Federal Rule of Civil Procedure 10, Chief Karch adopts in its entirety, incorporates herein as though set forth at length, and reasserts Section IV. D. of his original Brief. ECF No. 14.

## V. CONCLUSION

For all the reasons explained above, Plaintiffs' Complaint must be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

Date: January 22, 2021

Respectfully Submitted,

MAKEL & ASSOCIATES, LLC

By:*/s/ Christopher P. Furman*
Christopher P. Furman, Esq.
Pa. ID. No.: 89822
98 E. Maiden St.
Washington, PA 15301
(724) 222-7639

*Attorneys for Defendant*
*Gene Karch*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Brief has been electronically filed and served upon all counsel of record via the Court's CM/ECF system this 22nd day of January, 2021.

MAKEL & ASSOCIATES, LLC

By:*/s/ Christopher P. Furman*
Christopher P. Furman, Esq.
Pa. ID. No.: 89822
98 E. Maiden St.
Washington, PA 15301
(724) 222-7639

*Attorneys for Defendant*
*Gene Karch*